UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT EDWARD SMITH, )
        Plaintiff )
)
)
    v. )    Civil Action No. 11-30143-KPN
)
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
        Defendant )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S
MOTION FOR JUDGMENT ON THE PLEADINGS and
DEFENDANT'S MOTION TO AFFIRM THE DECISION OF
THE COMMISSIONER (Document Nos. 18 and 21)
March 30, 2011

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 405(g). Robert Smith ("Plaintiff") asserts that the Commissioner's decision denying him such benefits -- memorialized in a December 20, 2010 decision of an administrative law judge -- is not supported by substantial evidence. Plaintiff has filed a motion for judgment on the pleadings and the Commissioner, in turn, has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following reasons, the court will deny Plaintiff's motion and

1

allow Defendant's motion to affirm.

## I. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

## II. BACKGROUND

On May 8, 2008, Plaintiff filed an application for SSI benefits, alleging a disability onset date of September 1, 2002. (Administrative Record ("A.R.") at 7.) Plaintiff claimed that he was disabled due to bipolar disorder and back problems. After Plaintiff's claim was denied both initially and upon reconsideration, he requested a hearing in front of an administrative law judge (hereinafter "ALJ"), which occurred on December 20, 2010. The parties are familiar with Plaintiff's medical record and so the court will not repeat it here. Instead, the court turns to the ALJ's decision and Plaintiff's arguments for judgment in his favor.

2

III. DISCUSSION

An individual seeking SSI must demonstrate both disability and financial need. *See* 42 U.S.C. § 1381a. Plaintiff's need is not in question. Plaintiff argues, however, that the ALJ erred in determining he was not disabled for purposes of the statute. For the following reasons, the court disagrees and, accordingly, affirms the ALJ's decision.

A. Disability Standard and the ALJ's Decision

The Act defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.

> Fifth, does the claimant's impairment prevent him from
> performing other work of the sort found in the economy? If
> so he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff has not engaged in any substantial gainful activity since April 11, 2008, the date he applied for benefits (question 1); Plaintiff has severe impairments due to his post-traumatic stress disorder ("PTSD"), schizo-affective psychosis, and bi-polar disorder (question 2); Plaintiff's impairments do not meet or medically equal a listed impairment (question 3); Plaintiff has no past relevant work but has the residual functioning capacity to perform unskilled work at all exertional levels, with a non-exertional limitation of being isolated from the public (question 4); and Plaintiff is able to perform other work that exists in significant numbers in the national economy (question 5). Therefore, the ALJ found, Plaintiff is not disabled within the meaning of the Act.

B. Plaintiff's Challenge to the ALJ's Decision

Plaintiff first argues that the ALJ's residual functional capacity determination was not supported by substantial evidence because it did not include additional mental limitations. Second, Plaintiff argues that the ALJ erred by considering his past criminal history in his credibility assessment. The court will address each argument in turn.

1. The ALJ's decision was based on substantial evidence

As the parties know, the court can only order reversal, modification or remand if

an administrative law judge's decision is not supported by substantial evidence in the record. The court may only "invalidate findings of fact which are derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Bazille v. Apfel*, 113 F.Supp.2d 181, 184 (D. Mass. 2000) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)).

Here, substantial evidence more than supports the ALJ's finding that Plaintiff could "perform a full range of work at all exertional levels but with the following non-exertional limitations: the job would have to be isolated from the public to account for socialization deficiencies, and be unskilled, to account for concentration deficits due to his mental impairments." (A.R. at 12.) These limitations, in the court's opinion, appropriately reflect the "intermittent difficulties with concentration/expression" noted by Dr. Ginette Langer, Ph.D., the state agency evaluator, (A.R. at 382), upon whose assessment the ALJ relied, as well as Plaintiff's own testimony at the hearing. (A.R. at 29-34.)

To be sure, Plaintiff argues that the ALJ's residual functional capacity determination should have been "far more restrictive" in light of his psychological disorders. The bulk of evidence Plaintiff cites in support of this assertion, however, are medical records that pre-date Dr. Langer's review and which she took into consideration. The evidence Plaintiff proffers that post-dates Dr. Langer's assessment is largely cumulative and, as such, was already considered.

For example, Plaintiff cites an August 2009 bipolar diagnosis that was not available to Dr. Langer and therefore omitted from her assessment; Dr. Langer,

5

however, was aware of Plaintiff's bi-polar disorder and incorporated it into her opinion. (A.R. at 369, 378, 382.) Similarly, Plaintiff cites complaints of anger, concentration deficits, racing thoughts auditory hallucinations, depression, and irritability but, again, such issues were well documented in the record Dr. Langer reviewed and were incorporated not only in her assessment but, as well, in the ALJ's limitations, which limit Plaintiff to work "isolated from the public." (A.R. at 9, 12.) In addition, Plaintiff notably fails to provide any examples of specific restrictions the ALJ omitted or to cite any ongoing limitations not addressed in the ALJ's residual functional capacity determination. In essence, Plaintiff merely summarizes selected evidence and suggests in conclusory fashion that the evidence demonstrates "limitations far more restrictive than acknowledged by the ALJ." Such an ipse dixit is insufficient to overturn the ALJ's findings. In short, the court finds that the ALJ's residual functional capacity decision is properly based on the record and supported by substantial evidence.

2. The ALJ's credibility determination

Plaintiff also argues that the ALJ's credibility evaluation was laced with bias given the ALJ's consideration of his past criminal history. Again, having reviewed the record, the court disagrees.

An administrative law judge, of course, must consider a claimant's subjective allegations of pain and functional limitations, but he is not required to accept those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living. *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 194-95 (1st Cir. 1987); *Avery v. Sec'y*

6

of Health & Human Servs., 797 F.2d 19, 22-23 (1st Cir. 1986); 20 C.F.R. § 416.929; Social Security Ruling 96-7p. Further, if an administrative law judge determines that a claimant's testimony is not credible, the judge "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986); *see also Larlee v. Astrue*, 694 F. Supp. 2d 80, 85 (D. Mass. 2010).

In the instant matter, the court finds that the ALJ properly considered Plaintiff's own testimony and weighed all the evidence of record before making a credibility determination. To be sure, while "a criminal record may undermine credibility, past misconduct alone cannot in itself provide a basis for automatically rejecting testimony outright." *See Bass v. Astrue*, slip op., 10-CV-30057-MAP, 2011 WL 31296 (D. Mass. Jan. 4, 2011). Here, however, it is clear from the decision and the record that, in making his credibility determination, the AlJ gave only secondary consideration to Plaintiff's criminal past. Granted, the ALJ questioned Plaintiff about his criminal convictions for selling drugs and forging a check. The ALJ, however, also asked Plaintiff if anything prevented him from performing the jobs suggested by the vocational expert, to which Plaintiff replied "no." (A.R. at 31.)[1] Moreover, in his decision, the ALJ made clear that,

---

[1] After the vocational expert supplied three possible jobs for an individual with Plaintiff's residual functional capacity - - unloading trucks at night, cleaning office buildings, or working in a laundry - - the following exchange occurred:

> ALJ: Okay, so Mr. Smith, is there any reason that you can think of with your health, relating to your health, that would prevent you from doing the three jobs you just heard mentioned, on a full-time basis?

"although [Plaintiff's] criminal background affects his credibility, his application is not being denied because he has been convicted of crimes. Rather, his application is being denied because he expressly stated he has an ability to engage in at least some full-time jobs, and because that statement is consistent with the evidence as it exists in the record of this case." (Id. at 14.) In short, nothing in the decision or the hearing transcript indicates that the ALJ discounted Plaintiff's testimony solely because of his criminal record or unfairly used that record against him.

Relatedly, Plaintiff's final argument - - that he was not afforded a non-adversarial hearing due to the ALJ's attention to his past criminal history - - falls short as well. Granted, in support, Plaintiff cites a footnote in the decision in which the ALJ states that "I am not able to ascertain whether [selling crack cocaine] equates to substantial gainful activity, so I will continue the sequential analysis past step one." (A.R. at 10.) However, this mention of his prior criminal activity as possible substantial gainful activity, Plaintiff's argument notwithstanding, did not render the hearing adversarial. Indeed, the ALJ resolved that particular issue in Plaintiff's favor. In sum, the court finds that the ALJ properly afforded Plaintiff a non-adversarial hearing.

## IV. CONCLUSION

For the reasons stated, Plaintiff's motion for judgment on the pleadings is DENIED and the Commissioner's motion to affirm is ALLOWED.

IT IS SO ORDERED.

---

Plaintiff: No.

(A.R. at 31.)

8

DATED: March 30, 2012

   /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
U.S. Magistrate Judge